UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA ESQUEVEL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:19-cv-01017-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Alicia Esquevel ("Plaintiff") seeks damages for personal injuries she sustained as a result of a fall that occurred while she was patronizing a business facility operated by Defendant Costco Wholesale Corporation ("Costco" or "Defendant"). Plaintiff's lawsuit was originally filed in Solano County Superior Court and alleged causes of action for general negligence and premises liability against Costco. Costco thereafter removed the matter to this Court citing diversity of jurisdiction under 28 U.S.C. § 1441.

Presently before the Court is Costco's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(a). Costco alleges that it is entitled to judgment as a matter of law because the undisputed facts show it lacked any actual or constructive

1

knowledge of the alleged hazard that caused Plaintiff to fall and that, absent such knowledge, Plaintiff can assert no viable claim against Costco for her injuries. As set forth below, Defendant's Motion is GRANTED.[1]

**BACKGROUND**

On August 15, 2018, Plaintiff and three other family members visited Costco's Vacaville, California, warehouse. At approximately 4:30 p.m., after buying three slices of pizza at the store's food court, Plaintiff turned away from the sales counter and began to walk towards the table where her family was sitting. Carrying both the pizza and several beverage cups, Plaintiff fell and hit her head on the corner of the soda machine. Def.'s Statement of Undisputed Fact ("SUF") Nos. 6-7.[2]

Although Plaintiff did not know what caused her to slip and did not observe any debris on the ground beforehand, her daughter claims she observed some ice and water spilled on the floor near where her mother had fallen. Id. at Nos. 8-9.

It is undisputed that there is no record of any other Costco patrons falling in the Vacaville store other than Plaintiff on August 15, 2018. Id. at No. 11. In addition, no evidence has been presented that Costco received any other direct notice of the spill before Plaintiff's injury in the form of a hazard report from either its customers or employees. Consequently, the salient issue becomes whether Costco had constructive notice of any dangerous condition.

Costco moved for summary judgment on January 30, 2020, on grounds that absent either direct or constructive notice it could not be liable for Plaintiff's injuries. Its moving papers primarily rely on the fact that Costco policy requires that each of its warehouses conduct hourly floor-walks each day in order look for any safety issues

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

[2] This and subsequent references to Def.'s SUF refer both to Defendant's Initial Statement (ECF No. 13-11), and Plaintiff's Response (ECF No. 23-1) thereto, as well as the evidence cited in both filings.

2

throughout its warehouses, including the food court area.  It does so by visually inspecting each aisle for any hazardous conditions such that any potential dangers can be immediately reported to a manager and corrected.   Moreover, after each hourly inspection employees document the results.  A declaration from the Vacaville store's Assistant General Manager, Milton Dennis, attests to this process.  Dennis Decl., ECF No. 13-6.  The "Daily Floor-Walk/Safety Inspection Log" completed the day of the subject incident, August 15, 2018, shows that an inspection was done beginning at 4:00 p.m. and ending a 4:20 p.m., roughly ten minutes before Plaintiff's fall.  According to Costco, the notations for that inspection revealed no safety hazards.  See id. at ¶¶ 6-7, Ex. Y.  Costco relied on those negative findings in moving, on January 30, 2020, for summary judgment based on lack of notice.

Plaintiff's counsel subsequently filed an ex parte application to extend its time for opposing Costco's Motion by 90 days in order to permit the completion of discovery necessary for opposing the Motion.  ECF No. 17.  The Court granted that Request, along with an additional request that the discovery be continued another 60 days due to logistical difficulties occasioned by the COVID-19 pandemic.  ECF Nos. 18, 20-22.

By the time Plaintiff ultimately filed her Opposition to Plaintiff's Motion on May 28, 2020 (ECF No. 23), several Costco employees working at its Vacaville store had been deposed.  Those depositions cast some doubt on whether the hourly safety inspections cited in Costco's moving papers in fact included the food court area where Plaintiff's fall occurred.  Gathan Hayles, the Vacaville store's food court manager on duty the day of the incident, along with Regina Scott, the store's membership manager also present that day, did not believe the hourly-documented Daily Floor-Walk Safety Inspections specifically included the food court area.  Hayles testified that while he did not believe the food court area was directly subject to the hourly inspection, he still thought if any "action" was needed to address safety concerns in the food court, the logs would have

///

///

so indicated. Hayles Dep., 109:22-110:17.[3] Scott similarly expressed her belief that the food court area was still examined during the course of the inspections even though the food court area had its own safety protocol to guard against safety hazards. Scott Dep., 86:10-22; 87:8-88:7.

The most significant evidence in terms of any hazard present at the time of Plaintiff's injury, however, came from Todd Avrin, a food court employee working the afternoon of the incident. Avrin testified that as a food court staffer he did whatever basic floor work was necessary, including cleaning and stocking the food court lobby, manning the cash register, doing dishes, or working in the "pizza room." Avrin Dep., 26:10-19. Like Hayles and Scott, Avrin also thought the regularly scheduled hourly safety inspections usually encompassed the food court area. Id. at 28:8-13. According to Avrin, however, the food court lobby was regularly cleaned about every thirty minutes. Id. at 26:20-2. Most importantly, Avrin went on to provide unequivocal testimony that he had personally cleaned the area where Plaintiff fell shortly before the incident.

Avrin, who was working the sales counter when Plaintiff fell and who took her food and beverage order, testified that he had completely cleaned the food court lobby, which included the beverage machine area where Plaintiff fell, just twenty minutes beforehand and had only recently returned to take orders and man the cash register before the incident. He testified that he "cleaned everything down" and made sure there was "no wetness" or any other debris on the floor during the course of his maintenance inspection. Id. at 32:22-33:8; 36:25-37:10. He stated that at the time of his clean-up, which was shortly before Plaintiff's accident, he did not notice anything wet or any type of liquid spill on the floor that would have caused a slipping hazard. Id. at 37:11-15. He added that the "detailed clean" he provided of the area, which included restocking the condiment tables as necessary, took between 15 and 20 minutes. Id. at 53:11-23.

///

---

[3] Complete copies of deposition transcripts obtained in this matter were lodged with the Court in connection with this Motion.

According to Avrin, he was certain, by the time he concluded his cleaning, that "everything was perfect." Id. at 71:9-14.

Once Avrin returned to the sales counter after he completed cleaning, he does not recall anyone bringing any spills in the lobby area to his attention prior to the time Plaintiff fell. Id. at 53:25-54:5.

Finally, Avrin testified that while the drain pipe for the soda machine sometimes was knocked ajar, causing some water to leak onto the floor, there were no such incident while he was on duty the day of the accident. Id. at 42:17-43:4.

## STANDARD

The Federal Rules of Civil Procedure[4] provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

///

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

5

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Therefore,

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

In a diversity action like this one, federal courts apply state substantive law. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001). California law, which accordingly governs the instant matter, is clear in providing that a commercial store operator like Costco does not become in effect an insurer for the safety of its patrons. Howard v. Omni Hotels Mgmt. Corp., 203 Cal. App. 4th 403, 431 (2012); Ortega v. Kmart Corp., 26 Cal. 4th 1200, 1205 (2001); Peralta v. The Vons Companies, Inc., 24 Cal. App. 5th 1035, 1038 (2018). Consequently, Costco is not strictly liable for any dangerous condition on its premises. Moore v. Wal-Mart Stores, Inc., 111 Cal. App. 4th 472, 476 (2003); Ernest W. Hahn, Inc. v. Superior Court, 1 Cal. App. 4th 1448, 1450-52 (1991). Instead, since prior knowledge or notice is an essential element of a premises liability claim, Plaintiff must show that Costco had actual or constructive notice of the dangerous condition that precipitated her injury so as to trigger a duty to exercise reasonable care in keeping its premises safe. Ortega, 26 Cal. 4th at 1206.[5] The burden of proof rests with Plaintiff to both show the requisite

---

[5] Both of Plaintiff's causes of action, for premises liability and negligence, share the same analytic structure. Plaintiff must establish a legal duty, breach of that duty, proximate cause and damages. Kesner v. Superior Court, 1 Cal. 5th 1132, 1158 (2016).

actual or constructive notice in time for Costco to have corrected the condition. Id. at 1203. In the absence of such notice, Costco cannot be liable and this Court must therefore find in its favor as a matter of law. See Moore, 111 Cal. App. 4th at 476.

As indicated above, there is no evidence that Costco had any actual notice of ice or water on the floor prior to Plaintiff's fall. There is nothing to suggest, for example, that a Costco employee knew of or saw any spill beforehand, or that anyone had alerted a Costco employee of a slipping hazard. Plaintiff herself admits that she saw nothing on the floor before she fell, and there is no evidence that any other Costco patron fell other than Plaintiff. SUF Nos. 5, 11.

The constructive notice alternative for establishing liability is satisfied when the allegedly dangerous condition exists long enough to have been discovered through ordinary care and inspection. Ortega, 26 Cal. 4th at 1206-07. In order to constitute constructive notice, then, Plaintiff must show "that [Costco] had notice of the defect in sufficient time to correct it." Id. at 1206. Costco is entitled to judgment as a matter of law in the absence of such showing. See id.; Peralta v. The Vons Companies, Inc., 24 Cal. App. 5th at 1035-37. Importantly, given this standard, "[n]o inference of negligence arises simply upon proof of a fall upon the owner's floor." Brown v. Poway Unified School Dist., 4 Cal. 4th 820, 827 (1993).

As Costco points out, California courts generally apply a 30-minute threshold for determining whether notice issues should be submitted to a jury, such that if "an active inspection of the relevant area occurred less than 30 minutes before the accident, summary judgment in favor of the store owner is appropriate." Cardoza v. Target Corp., No. 17-2232-MWF (RAOx), 2018 WL 3357489 at * 3 (C.D. Cal. June 22, 2018) (holding that an inspection of the relevant area 10 minutes before the slip and fall establishes a lack of constructive notice, therefore obviating against any liability).

Here, as set forth above, Costco maintains that its hourly floor-walks to inspect the hazard were performed on the day of the incident, with the last one completed between 4:00 and 4:20 p.m., approximately ten minutes before Plaintiff fell. SUF No. 18.

There was no indication of any hazard recorded in that inspection, and since the spilled substance appears to have been a mixture of ice and liquid that would soon have melted entirely on the August afternoon when Plaintiff's fall occurred, it would appear unlikely that the substance had been there for long.

Even if Plaintiff casts doubt on the efficacy of Costco's floor inspections in this case by pointing to testimony that such inspections did not necessarily include its food court area, the evidence before this Court still does not satisfy Plaintiff's burden in showing the requisite constructive notice.  In short, the uncontradicted testimony of food court employee Todd Avrin shows that Avrin personally cleaned the lobby area where Plaintiff's fall occurred about 20 minutes beforehand, at which time he did not notice any spills on the floor.  Nor is there any evidence that any Costco patron brought any spill to the attention of either Avrin or any other Costco employee.  Significantly, too, Avrin's inspection occurred within the 30-minute window of time deemed sufficient by California courts in militating against constructive notice as set forth above.  Plaintiff has therefore failed to show the notice required to state a viable claim against Costco, and Costco is accordingly entitled to judgment in its favor.[6]

///
///
///
///
///

---

[6] The Court recognizes that much of Plaintiff's Opposition centers around expert testimony obtained from Zachary Moore, a licensed mechanical engineer she retained to investigate the incident. Mr. Moore opined, most prominently, that the flooring material used in the food court was too slippery and that mats should have been used.  The properties of the flooring material used, however, do not bear upon whether Costco had constructive notice on the day of the accident as to a particular danger.  Nor has Plaintiff produced any evidence suggesting any link between the flooring material used and other falls that occurred in the food court area.  Absent such evidence, Moore's opinion is little more than sheer speculation. Speculation alone is insufficient to defeat summary judgment.  See Peralta v. The Vons Companies, Inc., 24 Cal. 5th at 1036.  Additionally, and even more importantly, conjecture does not provide the actual or constructive notice necessary to pursue a products liability case like this one.  See Alacan v. Target Corp., No. CV 14-04564-AB (VBKx), 2015 WL 10945603 at *3 (C.D. Cal. June 26, 2015), quoting Ortega v. Kmart Corp., 26 Cal. 4th at 1205-06.

**CONCLUSION**

For the reasons set forth above, Defendant Costco's Motion for Summary Judgment (ECF No. 13) is GRANTED.[7]  The Clerk of Court is directed to enter judgment in Costco's favor and close the file.

IT IS SO ORDERED.

Dated:  September 3, 2020

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] While Plaintiff requests that any ruling on Costco's Motion be deferred in order to complete additional discovery, as indicated above the Court has already granted two extensions for that purpose, Moreover, and perhaps most importantly, Plaintiff has provided no explanation as to how any additional discovery would change the outcome of this Motion as delineated above.  Under the circumstances, the Court declines Plaintiff's request for a third extension.